UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ASCENTIUM CAPITAL LLC,

                        Plaintiff,

        -against-

FULL SPEED AUTO GROUP, INC., IGOR DATIEV,
and MIRAIDA DATIEVA,

                        Defendants.
------------------------------------------------------------------X

**REPORT & RECOMMENDATION**
22-CV-7559-DG-SJB

**BULSARA, United States Magistrate Judge:**

        Ascentium Capital LLC ("Ascentium") commenced this action on December 13, 2022 against Defendants Full Speed Auto Group, Inc. ("Full Speed Auto"), Igor Datiev ("Datiev"), and Miraida Datieva ("Datieva" and collectively, "Defendants") for failure to comply with a loan for the purchase of a Dodge Ram.  (Compl. dated Dec. 13, 2022 ("Compl."), Dkt. No. 1).  They sought damages, return of the vehicle, interest, and attorney's fees and costs.  After Defendants failed to appear and a default was entered against each of them, Ascentium moved for default judgment.  (Mot. for Default J. dated Feb. 9, 2023 ("Mot. for Default J."), Dkt. No. 11).  The Honorable Diane Gujarati referred the motion to the undersigned for a report and recommendation.  (Order Referring Mot. dated Feb. 10, 2023).  For the reasons stated below, it is respectfully recommended that Ascentium's motion be granted in part and denied in part.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

        Ascentium is a Delaware limited liability company, whose sole member is a citizen of Alabama.  (Compl. ¶ 1).  Full Speed Auto is a New York corporation with its principal place of business at 39 Wolcott Avenue, Staten Island, New York 10312.  (*Id.* ¶ 2).  Defendants Datiev and Datieva (together, the "Individual Defendants") are

President and an officer, respectively, of Full Speed Auto, and are both citizens of New York residing in Staten Island, New York.  (*Id.* ¶¶ 3–4).

On or about September 24, 2021, Full Speed Auto entered into Equipment Finance Agreement No. 2628197 (the "EFA") with Ascentium to finance the purchase of a 2021 Dodge Ram 5500 with Century Wrecker Body, VIN #3C7WRNEL3MG662093 (the "Collateral" or "Dodge Ram").  (*Id.* ¶ 7).  Pursuant to the terms of the EFA, Full Speed Auto was to pay Ascentium $167,505.12 over 72 monthly payments, each for $2,326.46.  (*Id.* ¶ 9).  Full Speed Auto also granted Ascentium a security interest in the Collateral.  (*Id.* ¶ 8).

Under the terms of the EFA, a default occurs if Full Speed Auto "fail[s] to pay any amount . . . when due" or "breach[es] any other obligation . . . contained in [the] EFA." (Equipment Finance Agreement No. 2628197 ("EFA"), attached as Ex. A to Compl.). Upon a default, Ascentium may "take possession of the Collateral" and require Full Speed Auto to deliver the Collateral "at [its] expense to a location designated by [Ascentium]."  (EFA; Compl. ¶ 10).  Ascentium may also "declare all sums due and to become due . . . immediately due and payable, [with] all future payments discounted at 3%."  (EFA; Compl. ¶ 10).  Full Speed Auto is liable for "all costs" incurred in enforcing Ascentium's rights under the EFA, including attorney's fees and costs of repossession. (EFA).  Datiev and Datieva executed a guaranty obligating themselves to pay all sums due and payable to Ascentium under the EFA (the "Guaranty").  (*Id.* ("You (jointly and severally if more than one) unconditionally guarantee to us and our assigns the payment and performance when due of all of the obligations of the Debtor under this EFA and all related documents executed by the Debtor.")).

2

Ascentium and Full Speed Auto simultaneously entered into a "Titling Addendum" to the EFA, agreeing that Full Speed Auto is "responsible for completing the transfer of title" for the Dodge Ram.  (Titling Addendum dated Sept. 24, 2021 ("Titling Addendum"), attached as Ex. B to Compl.).  Title was to be transferred by providing all required documents either: (1) directly to the Department of Motor Vehicles ("DMV"); or (2) to a third party approved by Ascentium to act as a "tag agency."  (Compl. ¶ 12; Titling Addendum).  Transferring the title through the first mechanism required Full Speed Auto to agree "to send a copy of the White Slip or Title/Registration Receipt to Ascentium no later than 30 days from the Commencement Date of the [EFA]" and deliver the original DMV processed certificate of title ("Original Certificate of Title") to Ascentium no later than 75 days from the Commencement Date."  (Compl. ¶ 13; Titling Addendum).  Failure to provide the Original Certificate of Title to Ascentium within 75 days triggers a default under the EFA and potential title penalties of up to $750 per month.  (Compl. ¶¶ 14–15; Titling Addendum).  Datiev signed the Titling Addendum on Full Speed Auto's behalf.  (Titling Addendum).

Full Speed Auto failed to make a monthly payment due on June 25, 2022, and payments due thereafter.  (Compl. ¶ 19).  On November 11, 2022, Ascentium sent a letter notifying Defendants of their default and the acceleration of obligations under the EFA, and demanding payment of the $140,456.52 owed under the EFA, plus interest, within 10 days.  (*Id*. ¶¶ 19–20; Notice of Default and Acceleration dated Nov. 11, 2022 ("Notice"), attached as Ex. C to Compl., at 1–2).  The Notice also demanded that Full Speed Auto "[c]ease taking any action to sell, use, assign or dispose of the Collateral," "[i]mmediately deliver to Ascentium any proceeds of the Collateral," and "[a]ssemble and surrender the Collateral to Ascentium."  (Compl. ¶ 21; Notice at 2).

3

Notwithstanding this demand for payment, Defendants failed to pay the amounts owed or surrender the Collateral. (Compl. ¶ 22). As of November 11, 2022, the following sums were due and payable: (1) past due monthly payments: $11,632.30; (2) accrued late charges: $930.60; (3) future accelerated monthly payments: $127,323.62; (4) documentation charges: $295.00; (5) site inspection charges: $175.00; and (6) prefunding charges: $100.00. (*Id.* ¶ 23).

Separately, Full Speed Auto defaulted under the Titling Addendum by failing to deliver the Original Certificate to Ascentium. (*Id.* ¶ 25). As a result, Full Speed Auto owes title penalties of up to $750 per month. (*Id.* ¶¶ 25–26). As of December 6, 2022, Full Speed Auto owed $9,000 in title penalties. (*Id.* ¶ 27).

Ascentium filed the Complaint on December 13, 2022. (Compl.). The Complaint alleges six causes of action: (1) breach of contract against Full Speed Auto under the EFA (Count I); (2) breach of contract against Datiev and Datieva under the EFA, pursuant to the Guaranty (Count II); (3) account stated against all Defendants (Count III); (4) breach of contract against Full Speed Auto under the Titling Addendum (Count IV); (5) breach of contract against Datiev and Datieva under the Titling Addendum, pursuant to the Guaranty (Count V); and (6) replevin against all Defendants (Count VI). (*Id.* ¶¶ 28–72). Datiev and Datieva were served with the summons and Complaint by leaving the documents at their dwelling—located at 39 Wolcott Avenue, Staten Island, NY 10312—with an individual of suitable age and discretion, who also resides there, and by mailing the documents to the same address via first-class mail. (Affs. of Service dated Dec. 27, 2022, Dkt. Nos. 6–7; Resp. to Order to Show Cause dated June 30, 2023, Dkt. No. 17 at 3–4; Decl. of Margaret M. Siller dated June 30, 2023, Dkt. No. 18 ¶¶ 5–7; Decl. of Jerry Noon dated June 30, 2023, Dkt. No. 19 ¶¶ 5–6). Ascentium served Full Speed Auto

4

through an individual, Lena "Doe," who identified herself as the owner of Full Speed Auto. (Aff. of Service filed Jan. 5, 2023, Dkt. No. 8). None of the Defendants appeared in the case, all failed to answer, and, as a result, the Clerk of Court entered default against each of them on January 26, 2023. (Entry of Default, Dkt. No. 10).

On February 9, 2023, Ascentium filed a motion for default judgment against all Defendants. (Mot. for Default J.). The Court ordered Ascentium to show cause why it was entitled to default judgment in light of "a series of failings," namely a failure to: (a) establish that service of the summons and Complaint on any of the Defendants was proper; and (b) provide a memorandum of law as required by Local Civil Rule 7.1. (Order to Show Cause dated June 23, 2023, Dkt. No. 16 at 1, 4–5). The Court directed Ascentium to explain why Lena "Doe" was authorized to accept service on Full Speed Auto's behalf, and provide proof of her ownership of the company, such that service was proper under Federal Rule 4(e)(1) and (h)(1). (*Id.* at 2–3). The Court also ordered Ascentium to show cause why service upon the Individual Defendants at an address in New York, and not Florida—where the Notice of Default and Acceleration was sent—was proper. (*Id.* at 3–4).

In response, Ascentium filed an affidavit of service showing the summons and Complaint were served on Full Speed Auto through the Office of the Secretary of State of New York on January 9, 2023. (Aff. of Service dated Jan. 23, 2023, Dkt. No. 18-1). It also provided independent proof of the Individual Defendants' change of residence to New York, (Public Records Search, Dkt. No. 18-2), and filed a memorandum of law in support of the motion on July 14, 2023. (*See* Revised Mem. of Law in Supp. of Mot. for Default J. dated July 14, 2023 ("Mem."), Dkt. No. 23). All motion papers were mailed to the Datiev and Datievas' last known residence and Full Speed Auto's last known

5

business address in compliance with Local Civil Rule 55.2(c).  (Decl. of Margaret M. Siller dated Feb. 12, 2023, Dkt. No. 14; Decl. of Margaret M. Siller dated July 16, 2023, Dkt. No. 24; Decl. of Margaret M. Siller dated Aug. 15, 2023, Dkt. No. 26).  Ascentium has, therefore, corrected the deficiencies outlined in the Order to Show Cause.

## DISCUSSION

I.  <u>Entry of Default</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2).  The Clerk of Court entered a default against each Defendant on January 26, 2023.  (Entry of Default, Dkt. No. 10).

The next question, before reaching liability or damages, is whether a defendant's conduct is sufficient to warrant entry of a default judgment.  In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001).  These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default

6

judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, Defendants' failure to respond to the Complaint demonstrates their default was willful. *See, e.g., Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff default judgment against them). A copy of the summons and Complaint was served on Full Speed Auto through the Office of the Secretary of State of New York on January 9, 2023. (Aff. of Service dated Jan. 23, 2023, Dkt. No. 18-1). Datiev and Datieva were served by leaving the documents at their dwelling with an individual of suitable age and discretion, who also resides there, and by mailing the documents to the same address via first-class mail. (Affs. of Service dated Dec. 27, 2022, Dkt. Nos. 6–7; Resp. to Order to Show Cause dated June 30, 2023, Dkt. No. 17 at 3–4; Decl. of Margaret M. Siller dated June 30, 2023, Dkt. No. 18 ¶¶ 5–7; Decl. of Jerry Noon dated June 30, 2023, Dkt. No. 19 ¶¶ 5–6). The motion for default judgment and supporting papers were also served via mail to Full Speed Auto's last known business address, and Datiev and Datieva's last known residential addresses. (Decl. of Margaret M. Siller dated Feb. 12, 2023, Dkt. No. 14; Decl. of Margaret M. Siller dated July 16, 2023, Dkt. No. 24; Decl. of Margaret M. Siller dated Aug. 15, 2023, Dkt. No. 26). Notwithstanding this notice and service, they did not respond to the Complaint or appear, and have not in any way attempted to defend themselves.

As to the second factor, Ascentium would be prejudiced if the motion for default judgment is denied, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL

7

5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Order (Jan. 26, 2009); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims"). Third, the Court cannot conclude there is any meritorious defense to Ascentium's allegations because Defendants did not appear, and no defense has been presented to the Court. *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

As a result, all three factors weigh in favor of the entry of default judgment. The Court now turns to the liability imposed, damages, and other relief to be awarded.

II.     Choice of Law

"A federal court sitting in diversity . . . must apply the choice of law rules of the forum state." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (quoting *Rogers v. Grimaldi,* 875 F.2d 994, 1002 (2d Cir. 1989)). As such, New York's choice of law rules govern this case. Under New York law, "courts will generally enforce choice-of-law clauses because contracts should be interpreted so as to effectuate the parties' intent." *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) (quotations omitted); *see also Ingevity Corp. v. Regent Tek Indus., Inc.*, No. 22-CV-565, 2023 WL 2553896, at *8 (E.D.N.Y. Mar. 17, 2023) ("In a contract dispute, New York courts will generally honor a choice-of-law provision in an agreement." (quotations omitted)). Ascentium and Full Speed Auto agreed that the EFA would be "governed and construed under the laws of the State of California." (EFA). The Court will, therefore, analyze Ascentium's claims in accordance with California's

substantive law.  *E.g.*, *ADI Glob. Distrib. v. Green*, No. 20-CV-3869, 2023 WL 3355049, at \*5 (E.D.N.Y. Apr. 24, 2023), *report and recommendation adopted*, 2023 WL 3346499, at \*1 (May 10, 2023).

III.   Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at \*2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at \*2 (Mar. 29, 2016).  "A default does not establish conclusory allegations, nor does it excuse any defects in the plaintiffs' pleading." *Mateo v. Universal Language Corp.*, No. 13-CV-2495, 2015 WL 5655689, at \*4, \*6–\*7 (E.D.N.Y. Sept. 4, 2015) (finding defendant was not plaintiff's employer based on his testimony that contradicted allegations in the complaint), *report and recommendation adopted*, 2015 WL 5664498, at \*1 (Sept. 23, 2015).  For example, an allegation is not "well-pleaded" if is contradicted by other evidence put forth by the plaintiff.  *See id.* at \*6–\*7; *Montblanc-Simplo GmbH v. Colibri Corp.*, 739 F. Supp. 2d 143, 151 (E.D.N.Y. 2010) ("[O]nce plaintiffs provided an actual picture of the allegedly infringing pen that contradicted the allegations in the Complaint, those allegations would no longer be considered well-pleaded.").  "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted); *see also*

9

10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (3d ed. 2017) (hereinafter Wright & Miller et al.).

    A.  <u>Breach of EFA & Titling Addendum – Against Full Speed Auto (Counts I & IV)</u>

Ascentium has asserted a valid cause of action for breach of contract. Under California law, the elements of breach of contract are: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Wright v. Albrecht*, No. 2:23-CV-453, 2023 WL 4872378, at *1 (E.D. Cal. July 31, 2023) (quoting *CDF Firefighters v. Maldonado*, 70 Cal. Rptr. 3d 667, 679 (Ct. App. 2008)). A customer's failure to make timely payments due under an equipment finance agreement constitutes a breach. *E.g.*, *Ascentium Cap., LLC v. Indu Motel, LLC*, No. 21-CV-376, 2022 WL 317188, at *1, *3 (E.D. Cal. Feb. 2, 2022) (granting motion for default judgment where plaintiff alleged defendant-borrower failed to pay amounts due under terms of loan), *report and recommendation adopted as modified*, 2022 WL 15523667, at *1 (Oct. 27, 2022).

Ascentium has alleged the existence of a contract, the EFA and its accompanying Titling Addendum, (Compl. ¶¶ 7, 12), and has produced the documents—both of which were executed by Full Speed Auto. Ascentium has alleged that it has performed under the EFA, (*id.* ¶ 18), and that Full Speed Auto failed to make the payment due on June 25, 2022, and all subsequent payments thereafter, which constitutes a breach of the EFA. (*Id.* ¶¶ 9, 18). It has likewise alleged that it performed under the Titling Addendum, (*id.* ¶ 24), and that Full Speed Auto defaulted by failing to deliver the Original Certificate of Title to Ascentium. (*Id.* ¶ 25). Finally, it has also alleged damages—including $11,632.30 in past due monthly payments and $127,323.62 in future accelerated monthly payments, and $9,000 in title penalties—flowing from the breach. (*Id.* ¶¶ 23,

10

27).  These allegations, taken as true on default, are sufficient to establish Full Speed Auto's breach of contract liability.  *E.g.*, *Ascentium Cap., LLC v. Aero Transp., Inc.*, No. 16-CV-1575, 2017 WL 1968335, at *2 (E.D. Cal. May 12, 2017), *report and recommendation adopted*, 2017 WL 3085014, at *1 (June 14, 2017).

      B.  <u>Breach of Contract (Guaranty) – Against Datiev & Datieva (Counts II & V)</u>

Ascentium alleges Datiev and Datieva breached the EFA and Titling Addendum, as a result of the Guaranty they signed.  "[T]he elements for a breach of guaranty claim are the same as the elements of a breach of contract claim."  *Indu Motel, LLC*, 2022 WL 317188, at *3.  A guarantor enters into a contract with a lender when it guarantees the loans to the borrower in the event of the borrower's default.  *Blue Growth Holdings Ltd. v. Mainstreet Ltd. Ventures, LLC*, No. 13-CV-1452, 2013 WL 4758009, at *2 (N.D. Cal. Sept. 4, 2013).  Datiev and Datieva "unconditionally guarantee[d] . . . the payment and performance when due of all of the obligations of the Debtor [Full Speed Auto] under th[e] EFA and all related documents executed by the Debtor ('Agreements')."  (EFA; Compl. ¶¶ 11, 38).  The Individual Defendants, therefore, entered into valid contracts by signing the Guaranty and agreeing to be held individually liable for any default in payment, and breached their obligations by failing to pay the amount owed on June 25, and all payments due thereafter.  *E.g.*, *Aero Transp., Inc.*, 2017 WL 1968335, at *2; *Indu Motel, LLC*, 2022 WL 317188, at *3–*4.

Because Ascentium argues Defendants are liable for account stated and replevin only "in the alternative," (Mem. at 10, 15–16, 18), and the Court recommends default judgment be granted on the breach of contract claims, the Court declines to consider liability under these causes of action.

11

IV.     Damages, Return of the Collateral, and Attorney's Fees and Costs

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotations omitted). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (collecting cases). Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Gilbert*, No. 20-CV-1441, 2022 WL 344270, at *3 (N.D.N.Y. Feb. 4, 2022) ("A hearing is not necessary where the record contains detailed affidavits and documentary evidence that enables the court to evaluate the proposed sum and determine an award of damages." (citing *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993))).

12

Under California law, "[f]or the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300.  Breach of contract damages must be "clearly ascertainable in both their nature and origin." *Id.* § 3301; *Aero Transp., Inc.*, 2017 WL 1968335, at *4.  Ascentium seeks a total of $149,456.52 in compensatory damages, comprising: (1) past due monthly payments: $11,632.30; (2) accrued late charges: $930.60; (3) future accelerated monthly payments (discounted using a present value discount rate of 3%): $127,323.62; (4) documentation charges: $295.00; (5) site inspection charges: $175.00; (6) prefunding charges: $100.00; and (7) title penalties: $9,000.00.  (Mem. at 20).  It also seeks $5,404.16 in attorney's fees, $921.96 in costs, post-judgment interest, and turnover of the Dodge Ram.  (*Id.* at 1–2, 21–22).

A.  Damages, Costs, and Expenses

The EFA entitles Ascentium to "all costs" incurred by Ascentium "in enforcing [its] rights."  (EFA).  It also provides for "late charges" on any amount not paid when due, and "documentation fees and all other fees [Ascentium] deem[s] necessary."  (*Id.*).  To support the total amount of damages it seeks, Ascentium provided a summary list of costs.  But Ascentium did so without explaining how it determined these amounts (and without citations to sources for any calculation).  It also failed to include any back-up documentation to support many of the calculated amounts, including, for example, the site inspection and documentation charges.  And, importantly, the calculations are not

13

straightforward or self-evident: the Court is at a loss as to how to reverse engineer Ascentium's calculations.[1]

"Bare assertions" that Ascentium is "owed these amounts are, on their own, conclusory allegations that are insufficient to support damages." *Freedom Mortg. Corp. v. King*, No. 19-CV-4833, 2023 WL 3494738, at *3 (E.D.N.Y. May 17, 2023) (collecting cases). As such, although the Court believes it appropriate to award these categories of damages under the EFA, it declines to do so now in precise amounts, in light of the absence of supporting documentation or information to verify the amounts sought. *E.g.*, *Aero Transp., Inc.*, 2017 WL 1968335, at *4 ("Plaintiff's motion and supporting documents only provide[] supporting evidence to demonstrate that late fees of $916.92 accrued through October 6, 2016. Plaintiff does not itemize or explain how the remainder of these charges was calculated. . . . The Court therefore recommends that the remaining unaccounted for charges be excluded from Plaintiff's damages."); *Ascentium Cap. LLC v. Cent. Med. Clinic of St. Paul, PLLC*, No. 19-CV-2831, 2021 WL 1169376, at *4 (D. Minn. Mar. 26, 2021) ("Ascentium has not, however, presented evidence explaining how these charges were incurred . . . . Nor has Ascentium explained why it is otherwise entitled to these particular charges under the Loan Agreement. Absent such an explanation, the Court declines to award these charges as damages.").

---

[1] For example, the EFA provides: "Any amount not paid when due is subject to a late charge of the lower of 10% of such amount or the highest amount allowed by law." Ascentium contends the past due payments amount to $11,632.30, and the accompanying late charges are $930.60. (Mem. at 12). Working backwards, this equates to a late charge of approximately 8%. But Ascentium fails to explain how it determined 8% was the operative late charge percentage. Likewise, Ascentium does not detail how it arrived at the $127,323.62 figure for accelerated future payments, by disclosing, for instance, the remaining principal balance prior to discounting to present value.

The Court, therefore, respectfully recommends denial of the default judgment motion with respect to damages on the breach of contract claims, without prejudice to renewal upon submission of supporting documentation.[2]

B.  Return of the Collateral

Ascentium also seeks repossession of the Dodge Ram, the Collateral secured by the EFA—a remedy contemplated under the terms of the EFA.  (EFA ("Upon [Full Speed Auto's] default, we may . . . take possession of the Collateral[.]")).  But Ascentium fails to clarify the procedural mechanism through which it is entitled to such a remedy.  Specifically, it fails to explain whether it is seeking the Dodge Ram through a remedy of specific performance under the EFA, replevin under California law, replevin under New York law, or some other mechanism.  Without such explanation—given the disparate requirements for each of these mechanisms—the Court cannot at this time grant this relief.

Consistent with the terms of the EFA—which provides that Ascentium may "take possession" of the Collateral and "require [Full Speed Auto] to deliver it . . . at [its] expense," (EFA)—the Proposed Order asks the Court to order Defendants to turn the vehicle over to Ascentium.  (*See* Proposed Default J., attached as Ex. 1 to Mot. for Default J., ¶ 6).  An order directing Defendants to turn over the Collateral to Ascentium is specific performance of the EFA.  To obtain specific performance under California law, Ascentium would have to establish: "(1) [t]he inadequacy of [its] legal remedy; (2) an underlying contract that is both reasonable and supported by adequate

---

[2] While the Court is prepared to grant an award of attorney's fees and litigation costs based on the present papers—calculations of which the Court will verify at an appropriate time—it is premature to do so at this time in light of the deficiencies in other categories of damages sought.

15

consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract." *Bishay v. Icon Aircraft, Inc.*, No. 2:19-CV-178, 2022 WL 378837, at *3 (E.D. Cal. Feb. 8, 2022) (quoting *Real Estate Analytics, LLC v. Vallas*, 72 Cal. Rptr. 3d 835, 840 (Ct. App. 2008)). It has not demonstrated any of those things. Indeed, the briefing omits any discussion of specific performance or its elements.

Ascentium does brief its replevin claim. Replevin is potentially an alternative means for obtaining the Collateral. Replevin—also commonly referred to as "claim and delivery"—is "a method of recovering property that is wrongfully being withheld by another." *Momentum Com. Funding, LLC v. Project Storm, LLC*, No. 2:21-CV-981, 2022 WL 2817429, at *4 (E.D. Cal. July 18, 2022) (quotations omitted*), report and recommendation adopted*, 2022 WL 3578571, at *1 (Aug. 19, 2022). That is, replevin is the "remedy that permits a prevailing party to recover . . . specific property." *Xerox Corp. v. AC Square, Inc.*, 2016 WL 5898652, at *3 (N.D. Cal. Sept. 1, 2016), *report and recommendation adopted*, 2016 WL 5869936, at *1 (Oct. 7, 2016). But recall that Ascentium indicated that it was not seeking replevin because the claim was allegedly duplicative. (Mem. at 16–18); *see supra* at 11.

Ascentium, having for the purposes of this motion given up its replevin cause of action, is trying to—in effect—use the remedy of replevin, *i.e.*, obtain turnover, nonetheless. That is not possible under the Federal Rules. For one thing, no Rule authorizes the use of replevin in this manner. Federal Rule 64 provides for replevin, but only as a *pre*-judgment remedy. 11A Wright & Miller et al., *supra*, § 2931 ("Rule 64 speaks to provisional remedies prior to judgment."). Separately, Rule 70 provides that

16

"[i]f the real or personal property [to be conveyed] is within the district, the court—instead of ordering a conveyance—may enter a judgment divesting any party's title and vesting it in others." Fed. R. Civ. P. 70(b). As its language suggests, Rule 70 requires an existing turnover or similar order; it is a *post*-judgment remedy transferring title when a party fails to comply with the court's original order. 12 Wright & Miller et al., *supra*, § 3021 ("Rule 70 gives the courts ample power to deal with parties who seek to thwart judgments by refusals to comply with orders to perform specific acts."). And Ascentium is trying not to just obtain title here, but the Dodge Ram itself.

At bottom, Ascentium either has to explain how it is entitled to specific performance or it must maintain its replevin claim. It has done neither. And so at this time, it is not entitled to transfer of the Collateral. There are additional issues that Ascentium must address should it seek turnover in a future motion by using replevin. "A replevin action must be brought in the jurisdiction in which the collateral is located." *Santander Bank, N.A. v. Contreras*, 414 F. Supp. 3d 650, 653 (S.D.N.Y. 2019) (quotations omitted); *e.g.*, *Encompass Aviation, LLC v. Surf Air Inc.*, No. 18-CV-5530, 2018 WL 6713138, at *3–*4 (S.D.N.Y. Nov. 30, 2018) ("Defendant moved by Order to Show Cause for an Order of Replevin and Temporary Restraining Order pursuant to Rule 64 of the Federal Rule[s] of Civil Procedure and Article 71 of the New York Civil Practice Law and Rules ('CPLR'). Defendant asked that this Court order Plaintiff to turn over eight aircraft in its control. These aircraft are located in California. The Court denied the request, because a New York court cannot replevy aircraft pursuant to CPLR Article 71 unless the aircraft are located in New York State."). Ascentium has not established that the Dodge Ram is currently in the Eastern District of New York. In addition, Ascentium briefed replevin under New York law. (*See* Mem. at 16–18). The

17

supposed basis for doing so is its assertion that California and New York law are the same, and the EFA's choice of law provision is irrelevant. (*Id.* at 16–17). The latter conclusion is based on a misunderstanding of conflict of law principles.[3] And it is doubtful that the replevin claims under New York and California law—both procedurally

---

[3] Ascentium asserts that the Californian contractual choice of law is irrelevant to its replevin claim. (Mem. at 16 (taking as a "given that there is no express choice of law for the replevin claim")). That simplistic formulation is not a correct statement of the relevant conflict of law rules. "Conveyance of interests in a chattel, or in a group of chattels, *is likely to involve both property and contractual questions*. . . . [T]he local law of the state which, with respect to the particular issue, has the most significant relationship to the parties, the chattel and the conveyance under the principles stated in § 6 will be applied to determine both the property and contractual aspects of the conveyance as between the parties and their privies." Restatement (Second) of Conflict of Laws § 244 (1971) (emphasis added).

18

and substantively—are co-extensive.[4] None of these important issues are hinted at, let alone addressed, in Ascentium's papers.[5]

As a result, damages and other relief cannot be awarded at this time.

## CONCLUSION

For the reasons described above, the Court respectfully recommends that Ascentium's motion for default judgment be granted with respect to liability on Ascentium's breach of contract claims (Counts I, II, IV, and V), and denied without

---

[4] California law does not actually have a cause of action for "replevin." *KMS, LLC v. Major League Trucking, Inc.*, No. 2:22-CV-6245, 2023 WL 4745721, at *2 (C.D. Cal. July 25, 2023). That tort is recognized in California as "conversion," *id.*; *Foster v. Sexton*, 276 Cal. Rptr. 3d 172, 191 (Ct. App. 2021), or an action "for specific recovery." 5 B.E. Witkin, *California Procedure Pleading* § 690 (6th ed. 2023); *see also* 6 B.E. Witkin, *California Procedure Provisional Remedies* § 238 (6th ed. 2023) ("A plaintiff entitled to the possession of personal property held by another may bring an action for specific recovery of the property."). In New York, the "essential elements of a cause of action in replevin" are "[d]emand upon, and refusal of, the person in possession of the chattel to return it." *Ball v. Cook*, No. 11-CV-5926, 2012 WL 4841735, at *10 (S.D.N.Y. Oct. 9, 2012) (alteration in original) (quoting *In re Peters*, 34 A.D.3d 29, 34 (1st Dep't 2006)). But whatever the nomenclature, federal courts do not simply brush aside the choice of law question posed here on the grounds of uniformity between the laws of the two states. *E.g.*, *FMC Corp. v. Cap. Cities/ABC, Inc.*, 915 F.2d 300, 302 (7th Cir. 1990) (analyzing choice of law question for replevin under California and New York law) ("FMC, which has its headquarters in California, asserts that California law should apply because the documents were taken in California and because California is where, since the taking, FMC is being deprived of their use. ABC contends, on the other hand, that New York law should apply because New York is where it is maintaining control over the documents.").

[5] Separately, Ascentium's Proposed Order seeks an award of $149,456.52 in actual damages and a "return [of] the collateral," as two, separate independent items. (*See* Proposed Default J. ¶¶ 2, 6). But to avoid double recovery, any compensatory damages owed must be offset by the proceeds recovered from any sale of the Dodge Ram after it is recovered. Ascentium acknowledges this when it argues: "Once the Collateral is delivered to Ascentium and is liquidated, the resulting net proceeds of the Collateral would be credited by Ascentium against the judgment balance," (Mem. at 23 n.10), but fails to account for the same in its Proposed Order.

prejudice in all other respects, including as to liability on the account stated (Count III) and replevin (Count VI) claims, and as to damages.

Any renewed motion for default judgment that seeks additional liability determinations or damages shall be filed no later than 30 days following the District Judge's resolution of the present motion.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision." (quotations omitted)).

Ascentium is directed to serve a copy of this Report and Recommendation on all Defendants and file proof of such service on the record by no later than August 30, 2023.

SO ORDERED.

*/s/ Sanket J. Bulsara*  August 28, 2023
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

20