UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ASCENTIUM CAPITAL LLC,

                        Plaintiff,

       -against-

FULL SPEED AUTO GROUP, INC., IGOR DATIEV,
and MIRAIDA DATIEVA,

                        Defendants.
------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
22-CV-7559-DG-SJB

**BULSARA, United States Magistrate Judge:**

       On December 13, 2022, Ascentium Capital LLC ("Ascentium") brought this action against Defendants Full Speed Auto Group, Inc. ("Full Speed Auto"), Igor Datiev ("Datiev"), and Miraida Datieva ("Datieva" and collectively, "Defendants") for failure to repay a loan for the purchase of a 2021 Dodge Ram 5500, VIN #3C7WRNEL3MG662093 (the "Dodge Ram"). (Compl. dated Dec. 13, 2022 ("Compl."), Dkt. No. 1). After Defendants failed to appear and default was entered against them, Ascentium moved for default judgment. (First Mot. for Default J. dated Feb. 9, 2023 ("First Default J. Mot."), Dkt. No. 11). The Court issued a Report and Recommendation (the "R&R"), granting the motion in part and denying it in part,[1] and the Honorable Diane Gujarati adopted the R&R in full, (Order Adopting R. & R. dated Sept. 21, 2023). Ascentium then filed a second motion for default judgment limited to its claim for damages and specific performance. (Notice of Mot. for Default J. dated Oct. 23, 2023

---

[1] *See Ascentium Cap. LLC v. Full Speed Auto Grp., Inc.*, No. 22-CV-7559, 2023 WL 6168277 (E.D.N.Y. Aug. 28, 2023), *report and recommendation adopted*, Order (Sept. 21, 2023).

("Second Default J. Mot."), Dkt. No. 30). For the reasons stated below, it is respectfully recommended that Ascentium be awarded damages and other relief as indicated herein.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court assumes familiarity with the facts and procedural history of this case, detailed in the Court's prior R&R. *See Ascentium Cap.*, 2023 WL 6168277, at *1–*3.

On February 9, 2023, Ascentium filed a motion for default judgment against all Defendants. (First Default J. Mot.). On August 28, 2023, the Court granted Ascentium's motion with respect to liability on its breach of contract claims (Counts I, II, IV, and V), and denied without prejudice with respect to liability on Counts III and VI, and as to damages. *Ascentium Cap.*, 2023 WL 6168277, at *9.[2] The Court directed Ascentium to file any renewed motion within 30 days of Judge Gujarati's resolution of their first motion. *Id.* After Judge Gujarati adopted the R&R in full, Ascentium filed a renewed motion for default judgment on October 23, 2023. (Second Default J. Mot.). Ascentium served the renewed motion for default judgment upon Defendants, in compliance with Local Civil Rule 55.2(c). (Decl. of Service dated Oct. 30, 2023, Dkt. No. 33). Judge Gujarati referred the renewed motion to the undersigned. (Order Referring Mot. dated Oct. 24, 2023).

Ascentium now seeks: (1) past due payments of $11,632.30; (2) accelerated future payments of $127,323.62 (discounted using a present value discount rate of 3%); (3) late charges of $930.60; (4) site inspection charges of $175.00; and (5) title penalties of $9,000, totaling $149,061.52 in actual damages. (Mem. of Law in Supp. of Pl.'s

---

[2] Counts III and VI were denied because the Court declined to consider them, as Ascentium only sought liability under those counts in the alternative to its breach of contract claims. *Ascentium Cap.*, 2023 WL 6168277, at *5. Ascentium does not renew its motion on these claims.

Renewed Mot. for Default J. ("Mem. of Law"), Dkt. No. 31 at 4). Ascentium also seeks repossession of the Dodge Ram, as well as attorney's fees, costs, and post-judgment interest. (*Id.* at 3–4).

## DISCUSSION

I. <u>Liability</u>

In light of the prior R&R granting liability as to Counts I, II, IV, and V, the Court need not engage in the traditional inquiry for obtaining a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). The Court thus proceeds to determining damages owed by Defendants.

II. <u>Damages, Return of the Collateral, and Attorney's Fees and Costs</u>[3]

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations and citations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28,

---

[3] In the prior R&R, the Court found that California law applied to the EFA between Ascentium and Full Speed Auto, under the EFA's choice-of-law provision. *Ascentium Cap.*, 2023 WL 6168277, at *4; (*see also* Equipment Finance Agreement ("EFA"), attached as Ex. A to Compl., Dkt. No. 1-5). The Court therefore applies California substantive law to Ascentium's damages inquest.

3

2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)).  "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

    A.    <u>Damages, Costs, and Expenses</u>

Under California law, "[f]or the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300.  Breach of contract damages must be "clearly ascertainable in both their nature and origin." *Id.* § 3301; *Ascentium Cap., LLC v. Aero Transp., Inc.*, No. 16-CV-1575, 2017 WL 1968335, at *4 (E.D. Cal. May 12, 2017), *report and recommendation adopted*, 2017 WL 3085014, at *1 (June 14, 2017).

As the Court explained in its prior R&R, "[t]he EFA entitles Ascentium to 'all costs' incurred by Ascentium 'in enforcing [its] rights.' (EFA).  It also provides for 'late charges' on any amount not paid when due, and 'documentation fees and all other fees [Ascentium] deem[s] necessary.' (*Id.*)." *Ascentium Cap.*, 2023 WL 6168277, at *6 (second, third, and forth alterations in original).  In its renewed motion for default judgment, Ascentium details how it arrived at a damages calculation of $149,061.52 for its breach of contract claim, which the Court has independently confirmed.

*First*, Ascentium asks for $11,632.30 in past due monthly payments and $127,323.62 in accelerated future payments.  (Mem. of Law at 4).  The EFA entitles

4

Ascentium to "declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by [Ascentium]." (EFA). Under the EFA, Defendants were required to make 72 monthly payments of $2,326.46. (*Id.*). When Ascentium issued a notice of default in November 2022, (Notice of Default dated Nov. 11, 2022 ("Notice of Default"), attached as Ex. C to Compl., Dkt. No. 1-7), five payments were past due, (Mem. of Law at 4; Decl. of Anthony Campisciano ("Campisciano Decl."), Dkt. No. 32 ¶¶ 4, 6), resulting in $11,632.30. (Notice of Default at 2). At the time of the notice of default, there were 59 future payments remaining. (Campisciano Decl. ¶ 8). Ascentium is thus entitled to $127,323.62 in accelerated future payments, based on a present value discount of 3%. (Mem. of Law at 5).[4]

*Second*, Ascentium seeks recovery for late charges. (*Id.* at 5–6). The EFA provides for a late charge of 10% of "[a]ny amount not paid when due." (*See* EFA; Mem. of Law at 5).[5] The Court recommends that Ascentium be awarded $930.58 in late charges.[6]

*Third*, Ascentium seeks $175.00 in site inspection charges, incurred through Ascentium's hiring of a repo agent to locate the Dodge Ram. (Mem. of Law at 6). The

---

[4] Ascentium determined which multiplier to apply to calculate "what $1 payable periodically is worth today for 3% at 59 months." (Campisciano Decl. ¶ 9 (quotations omitted)). That multiplier is 54.7914885810, which, when multiplied by the monthly payment amount of $2,326.46, produces a total future accelerated payment balance of $127,470.21. (*See id.*). Ascentium's notice of default letter to Defendants included a slightly lower amount—$127,323.62 in future accelerated payments. Ascentium, therefore, only seeks this amount. (*See* Notice of Default at 2; Mem. of Law at 5).

[5] Specifically, the EFA provides that "[a]ny amount not paid when due is subject to a late charge of the lower of 10% of such amount or the highest amount allowed by law." (EFA).

[6] The first four past due payments total $9,305.84, and 10% of that amount is $930.58. (Mem. of Law at 6).

5

agent located the Dodge Ram on September 8, 2022, and spoke to Datieva.  (Inspection Services Invoice, attached as Ex. C to Campisciano Decl., Dkt. No. 32-3 at 2).  Ascentium paid the $175.00 invoice in full.  (Campisciano Decl. ¶ 14).  The Court recommends that Ascentium be awarded $175.00 as recovery for the site inspection fee, since it is entitled to recover all costs incurred in enforcing the EFA.

*Fourth*, Ascentium requests $9,000.00 in title penalties.  (Mem. of Law at 6–7).  The Titling Addendum to the EFA provides that Full Speed Auto is "responsible for completing the transfer of title" for the Dodge Ram; failure to provide the certificate of title to Ascentium within 75 days of the date of the Titling Addendum triggers a default and title penalties of up to $750.00 per month.  (Titling Addendum dated Sept. 24, 2021 ("Titling Addendum"), attached as Ex. B to Compl., Dkt. No. 1-6); *see Ascentium Cap.*, 2023 WL 6168277, at *2.  In its prior R&R, the Court found that both Defendants were liable for breach of the Titling Addendum because Full Speed Auto failed to deliver the certificate of title.  *Ascentium Cap.*, 2023 WL 6168277, at *5.  The date of the Title Addendum was September 24, 2021, meaning that the final day that Defendants could have delivered the certificate of title to avoid a default was 75 days later, December 8, 2021.  (Titling Addendum; *see* Mem. of Law at 7).  Ascentium filed the Complaint on December 13, 2022, resulting in 12 months of default.  (Mem. of Law at 7).  Based on this, the Court recommends that Ascentium be awarded $9,000.00 in title penalties for breach of the Titling Addendum.

In sum, the Court respectfully recommends that Ascentium be awarded $149,061.52 in damages for its breach of contract and breach of guaranty claims.

6

B.      Return of the Collateral

In its prior R&R, the Court denied Ascentium's motion to take repossession of the Dodge Ram because the mechanism under which Ascentium sought this remedy was unclear. *Ascentium Cap.*, 2023 WL 6168277, at *7–*8 & n.4. The Court could not determine whether Ascentium sought specific performance under the EFA, replevin under New York law, an action for specific performance under California law, or some other mechanism. *Id.* In its renewed motion, Ascentium clarifies this ambiguity and asks for repossession of the Dodge Ram via specific performance through enforcement of the EFA. (Mem. of Law at 7).

To obtain specific performance under California law, the non-breaching party must establish: "(1) [t]he inadequacy of [its] legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract." *Bishay v. Icon Aircraft, Inc.*, No. 19-CV-178, 2022 WL 378837, at *3 (E.D. Cal. Feb. 8, 2022) (quoting *Real Est. Analytics, LLC v. Vallas*, 72 Cal. Rptr. 3d 835, 840 (Ct. App. 2008)). "Specific performance is not itself a cause of action, but rather 'a remedy for breach of contract.'" *LOL Fin. Co. v. Mebane*, No. 10-CV-78, 2011 WL 121566, at *3 (E.D. Cal. Jan. 13, 2011) (emphasis omitted) (quoting *Golden W. Baseball Co. v. City of Anaheim*, 31 Cal. Rptr. 2d 378, 403 (Ct. App. 1994)), *report and recommendation adopted*, 2011 WL 345929, at *1 (Feb. 2, 2011).

7

Ascentium has established that all relevant factors are present to justify specific performance and repossession of the Dodge Ram.[7] The Court has found the existence of a valid and enforceable underlying contract in the EFA. *Ascentium Cap.*, 2023 WL 6168277, at *5. The Court has also found that Ascentium has fully performed under the EFA. *Id.* The EFA provides Ascentium with the right to, in the event of default, "take possession" of the Dodge Ram and "require [Full Speed Auto] to deliver it . . . at [its] expense." (EFA). These terms are sufficiently definite for the Court to direct specific performance of the repossession of the Dodge Ram. *See, e.g.*, *LOL Fin. Co.*, 2011 WL 121566, at *3.

As to the inadequacy of its legal remedy, a court may find money damages to be inadequate for several reasons, including the "difficulty and uncertainty in collecting provable damages" or "the insufficiency of damages to obtain the promised performance or a sufficient substitution elsewhere." 2 Timothy Murray & Jon Hogue, *Corbin on California Contracts* § 63.01 (2023); *see also, e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.*, No. 10-CV-2503, 2012 WL 5928139, at *13 (S.D. Cal. Nov. 26, 2012) (collecting cases). Without the ability to recover on its collateral, Ascentium will not have received the benefit of its bargain, which was to have the vehicle as security for nonpayment. *See, e.g.*, *Highland P'ship, Inc.*, 2012 WL 5928139, at *13 ("[I]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." (quoting *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984))). Moreover, as the need to sue for nonpayment itself

---

[7] Mutuality of remedies is not required if two other requirements are met: (1) specific performance would otherwise be appropriate, and (2) the non-breaching party has substantially performed. Cal. Civ. Code § 3386.

establishes, the security was necessary to protect Ascentium's interest. Payment following nonpayment and default seems exceptionally unlikely. If specific performance were not granted, Ascentium would have received nothing, having transferred a valuable asset to Defendants. Finally, as to the last factor, the performance that Ascentium seeks is identical to that contemplated under the underlying contract. (*See* EFA).

In conclusion, the Court respectfully recommends that an order be entered allowing Ascentium to repossess and seize the Dodge Ram. Importantly, "a party may not obtain both specific performance and damages for the same breach of contract . . . . [because] 'such an award would constitute a double recovery.'" *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 905 (2002) (quoting *Rogers v. Davis*, 34 Cal. Rptr. 2d 716, 719 (Ct. App. 1994)).

Because Ascentium has been awarded monetary damages and equitable relief for the same injury, Ascentium may elect to receive either the monetary damages or the seizure of the Dodge Ram, but not both. *See, e.g.*, *Denevi v. LGCC, LLC*, 18 Cal. Rptr. 3d 276, 283–84 (Ct. App. 2004); *cf. W. Pac. Elec. Co. v. Dragados/Flatiron*, 534 F. Supp. 3d 1209, 1254 (E.D. Cal. 2021). As such, the Court recommends that the money judgment be offset by the amount of proceeds Ascentium receives from the sale of the Dodge Ram should it obtain its possession. (*See* Proposed Order, Dkt. No. 30-1 ¶ 8).[8]

---

[8] Under the election of remedies doctrine, "[w]here a person has two concurrent remedies to obtain relief *on the same state of facts*, and *these remedies are inconsistent*, he must choose and elect between them; and if he has clearly elected to proceed on one, he is bound by this election and cannot thereafter pursue the other." *Denevi*, 18 Cal. Rptr. 3d at 281. In California, "an election should not be compelled prior to *satisfaction of judgment*, unless the plaintiff has gained some other benefit that would make it inequitable to permit continued pursuit of an otherwise available remedy." *Id.* at 284.

C.     Attorney's Fees, Costs, and Post-Judgment Interest

Ascentium seeks attorney's fees, costs, and post-judgment interest and supports its motion with supporting documentation.[9]

1.     Attorney's Fees

Under California law, which governs the EFA, "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties . . . then th[at] party . . . shall be entitled to reasonable attorney's fees[.]"[10] Cal Civ. Code § 1717(a). Here, the EFA authorizes Ascentium to recover fees and costs from the Defendants in the event of default: "[Full Speed Auto] shall reimburse [Ascentium] for all costs . . . incur[red] in enforcing [its] rights including [its] attorneys' fees and costs of repossession, repair, storage, and remarketing of the Collateral." (EFA); *see, e.g.*, *Unicom Sys., Inc. v. Farmers Grp., Inc.*, 405 F. App'x 152, 154 (9th Cir. 2010) (affirming award of attorney's fees under California contract).

In calculating a "reasonable" attorney's fee award for a breach of contract action, the trial court has "broad authority." *Holguin v. Dish Network LLC*, 178 Cal. Rptr. 3d 100, 118 (Ct. App. 2014) (quotations omitted). Courts use the "lodestar" framework to

---

[9] Ascentium incorporates its fee documentation from its prior motion by reference. (Mem. of Law at 11–12; *see* Revised Mem. of Law in Supp. of Pl.'s Mot. for Default J. dated July 14, 2023 ("First Mem. of Law"), Dkt. No. 23 at 21–22; Attorney's Fee and Costs Invoices ("Invoices"), Dkt. No. 13-4; Resumes and Firm Biographies ("Firm Bios"), Dkt. No. 13-5).

[10] "In diversity cases, a party's entitlement to a fee award and the amount of such fees are governed by state law. The Court therefore applies the law specified in the parties' contractual choice-of-law provision." *Ingevity Corp. v. Regent Tek Indus., Inc.*, No. 22-CV-565, 2022 WL 18859010, at *10 (E.D.N.Y. Nov. 23, 2022) (citations omitted) (collecting cases), *report and recommendation adopted*, 2023 WL 2553896, at *1 (Mar. 17, 2023).

determine "the number of hours reasonably expended multiplied by the reasonable hourly rate." *Id.* (quotations omitted). "The reasonable hourly rate is that prevailing in the community for similar work," *PLCM Grp. v. Drexler*, 95 Cal. Rptr. 2d 198, 206 (2000), meaning that the Court must look to the "prevailing market rates in the forum district"—here, the Eastern District of New York. *Opulen Ventures, Inc. v. Axcessa, LLC*, No. 12-CV-1776, 2013 WL 829230, at *4 (E.D.N.Y. Jan. 22, 2013), *report and recommendation adopted*, 2013 WL 828922, at *1 (Mar. 6, 2013).

"Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff[.]" *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848, 2022 WL 4646866, at *13 (E.D.N.Y. Aug. 29, 2022) (quotations omitted), *report and recommendation adopted*, 2022 WL 4662247, at *1 (Sept. 30, 2022); *see also Interpool, Inc. v. JJS Transp. & Distrib. Co.*, No. 22-CV-1103, 2022 WL 17335670, at *4 (E.D.N.Y. Nov. 30, 2022) (same). "The burden is on the party moving for attorney's fees to justify the hourly rates sought." *Brown v. Green 317 Madison, LLC*, No. 11-CV-4466, 2014 WL 1237448, at *5 (E.D.N.Y. Feb. 4, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)), *report and recommendation adopted*, 2014 WL 1237127, at *1 (Mar. 25, 2014). That is, "the fee applicant [has the burden] to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Margaret Siller of Maynard Nexsen P.C. represents Ascentium and seeks attorney's fees for herself and two other attorneys, Jayna Partain Lamar and Mary

11

Mangan. (*See generally* Invoices; Firm Bios). Ms. Siller is of counsel at Maynard Nexsen and requests an hourly rate of $380. (*E.g.*, Invoices at 2). Ms. Siller joined the firm in 2021 and is a corporate finance litigator. (*See id.* at 5–6). The Court finds that it is appropriate to award her an hourly rate within the range of that awarded to partners in this District. As such, the Court recommends awarding Ms. Siller the requested hourly rate of $380. Jayna Partain Lamar is a partner/shareholder at Maynard Nexsen and requests an hourly rate of $598. (*E.g.*, *id.* at 2). Ms. Lamar has been a partner at the firm for over 30 years. (Firm Bios at 3). Although Ms. Lamar is an experienced attorney, her requested rate is almost $200 above the maximum of what is usually awarded to partners in this District. *See Diaz*, 2022 WL 4646866, at *13. Counsel has not provided sufficient information to justify why Ms. Lamar should be awarded a higher amount. Given the fact that this has been a relatively straightforward case, and that counsel has failed to justify Ms. Lamar's request in their memorandum of law, the Court recommends that Ms. Lamar's hourly billing rate be reduced to $380. Finally, Mary Mangan is a senior associate and requests an hourly rate of $285.96. (*E.g.*, Invoices at 7). Ms. Mangan has been a litigator at Maynard Nexsen since 2018. (Firm Bios at 12). The Court finds that it is appropriate to award her an hourly rate within the range of that awarded to senior associates in this District. As such, the Court recommends awarding Ms. Mangan the requested hourly rate of $285.96. *See, e.g.*, *Diaz*, 2022 WL 4646866, at *14.

Turning to the reasonableness of time expended, counsel submitted contemporaneous billing records showing the legal services performed, including the dates that the services were provided, the amount of time expended, and a brief description of each task performed. (*See* Invoices). According to the billing records

12

submitted, Maynard Nexsen attorneys spent a total of 18.8 hours (13.8 hours by Ms. Siller, 0.8 hours by Ms. Lamar, and 4.2 hours by Ms. Mangan) on this case. (*See* Invoices at 3, 7, 12). The Court finds these hours to be reasonable, considering the straightforward nature of the case. *See, e.g.*, *Bank of Am., N.A. v. Brooklyn Carpet Exch., Inc.*, No. 15-CV-5981, 2016 WL 8674686, at *10 (S.D.N.Y. May 13, 2016) (collecting cases awarding reasonable attorney's fees in breach of contract default judgments, ranging from 13.3 hours to 20.6 hours), *report and recommendation adopted*, 2016 WL 3566237, at *2 (June 27, 2016).

According to the Court's calculations, the fee award totals $6,749.03. However, since counsel applied a discount of 25% to their fees, (*see* Invoices at 2, 5, 10, 14), they only request $5,404.16 in fees. (First Mem. of Law at 22). Thus, the Court recommends that counsel be awarded $5,404.16 in attorney's fees.

    2. <u>Costs</u>

Counsel also seeks reimbursement for $921.96 in costs consisting of $402 in court filing fees and $519.96 in service of process costs. (First Mem. of Law at 22; Invoices at 15–18). Under California's breach of contract fee statute, a prevailing party is entitled to recover costs from the non-prevailing party. *See* Cal. Civ. Code § 1717(a). The EFA also entitles Ascentium to recover costs from Full Speed Auto, in the event of default. (EFA). Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). Only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. *Moon v. Gab Kwon*, 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002) (quoting *Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir. 1987)).

13

Ascentium has submitted invoices as evidence for each of the requested costs. (*See* Invoices at 15–18). The Court deems these costs to be reasonable. The Court thus recommends that Ascentium be awarded $921.96 in costs.

3. Post-Judgment Interest

Ascentium also requests post-judgment interest, pursuant to 28 U.S.C. § 1961. (First Mem. of Law at 22). "The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)). The Court therefore recommends a post-judgment interest award on the total damages, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters judgment until the date of payment.

CONCLUSION

For the reasons described above, the Court respectfully recommends that Ascentium be awarded:

- The return of the collateral, as defined in Equipment Finance Agreement No. 2628197, and any proceeds resulting from the sale of the collateral;
- $149,061.52 in damages, to be offset by the proceeds Ascentium receives from the sale of the collateral, should it be recovered;
- $5,404.16 in attorney's fees;
- $921.96 in costs;
- Post-judgment interest in an amount to be calculated by the Clerk of Court pursuant to 28 U.S.C. § 1961(a).

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections

14

within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

    Ascentium is directed to serve a copy of this Report and Recommendation on all Defendants and file proof of such service on the record by no later than June 18, 2024.

SO ORDERED.

/s/ *Sanket J. Bulsara*  June 11, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York